UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

BUSINESS CASUAL HOLDINGS, LLC,
a Delaware limited liability company,

        Plaintiff,

           v.

TV-NOVOSTI, a Russian autonomous
non-profit organization,

        Defendant.

**Case No.:  1:21-cv-2007-JGK**

**JURY TRIAL DEMANDED**

---

## SECOND AMENDED COMPLAINT

Plaintiff Business Casual Holdings, LLC, by and through its attorneys, Duff Law PLLC, states as follows:

### NATURE OF THE DISPUTE

1.    Plaintiff Business Casual Holdings, LLC ("Plaintiff" or "Business Casual") seeks monetary and injunctive relief from Defendant TV-Novosti, a Russian autonomous non-profit organization operating the YouTube channel RT Arabic ("Defendant" or "TV-Novosti") for copyright infringement and violations of the Digital Millennium Copyright Act ("DMCA").

2.    Defendant published three (3) videos on YouTube that infringed upon original and copyrighted content rightfully and solely owned by Plaintiff.

3.    Plaintiff submitted DMCA takedown notices to YouTube with respect to each of the three infringing videos published by Defendant.

4.      Defendant filed a DMCA counter notification with YouTube as to one of the infringing videos it published, which forced Plaintiff to file its initial Complaint within the brief window of time prescribed by the DMCA to preserve its rights. Had Plaintiff not filed its Complaint to restrain Defendant's infringing activities, YouTube would have reinstated Defendant's infringing material in accordance with the DMCA.

5.      On March 12, 2021, Defendant filed an additional DMCA counter notification with YouTube, forcing Plaintiff to file its First Amended Complaint.

## THE PARTIES

6.      Plaintiff is a limited liability company duly organized under the laws of Delaware.

7.      Plaintiff creates original documentary content that it posts on the YouTube channel that it operates located at the following domain: *www.YouTube.com/BusinessCasual* ("Plaintiff's YouTube Channel").

8.      Defendant is a Russian autonomous non-profit organization with a registered office at Borovaya St., 3 Building 1, Moscow 111020.

9.      Defendant operates the YouTube channel RT Arabic located at the following domain: *www.YouTube.com/user/RTarabic* ("Defendant's YouTube Channel") along with thirty-eight (38) associated YouTube channels. A true and correct copy of a list of Defendant's associated YouTube channels is attached as **Exhibit A**.

## JURISDICTION AND VENUE

10.     This is a civil action arising from Defendant's willful, intentional, and unauthorized copying of copyrighted works rightfully and solely owned by Plaintiff, as well as

Defendant's willful, intentional, and material misrepresentations concerning the existence of infringing material published on Defendant's YouTube Channel.

11.     Plaintiff's causes of action arise under the Copyright Act, 17 U.S.C. § 101 *et seq*.

12.     Plaintiff's videos are viewed by consumers within this judicial district.

13.     Defendant marketed, advertised, and generated revenue from its infringing videos within this judicial district.

14.     This Court has original subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331, 28 U.S.C. §§ 1338 and 1338(a).

15.     This Court has personal jurisdiction over Defendant because, Defendant filed three DMCA counter notifications in response to the DMCA takedown notices Plaintiff sent to YouTube concerning Defendant's infringing videos (described below). Upon submitting its DMCA counter notifications to YouTube, Defendant expressly consented to any Federal District Court for any judicial district in which YouTube may be located.

16.     This Court has personal jurisdiction over Defendant because Defendant purposefully directs its business activities toward consumers in the State of New York, including within this judicial district, derives a commercial benefit from its contacts within the State of New York, and has caused material and irreparable injury to Plaintiff and consumers within the State of New York and this judicial district.

17.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400 because Defendant uploaded, hosted, and commercially exploited its infringing videos through an interactive website that derived revenue from viewers in this judicial district.

## STATEMENT OF FACTS

18.     Business Casual, a YouTube channel with more than one million subscribers and eighty million total views across its videos, is an American film production company focused on producing documentaries about business history.

19.     Defendant operates dozens of associated YouTube channels, including Defendant's YouTube Channel.

20.     Defendant's YouTube Channel published at least three videos that infringed upon Business Casual's copyrights in two original videos previously published by Business Casual.

21.     On June 8, 2018, Business Casual published an original documentary video titled *How Rockefeller Built His Trillion Dollar Oil Empire* at *www.youtube.com/watch?v=9saLsvWcppw* (the "Rockefeller Video").

22.     On June 25, 2020, Business Casual published an original documentary video titled *J.P. Morgan Documentary: How One Man Financed America* at *www.youtube.com/watch?v=5jjdErDkDZE* (the "J.P. Morgan Video").

23.     Business Casual's J.P. Morgan Video and Rockefeller Video are creative and original expressions created by turning two-dimensional images into three-dimensional models. Business Casual converts two-dimensional images into several layers that are selected, refined, and arranged on top of one another in an artistic video editing process known as "parallax," which requires myriad creative choices. In addition to this multi-photo layering process, Business Casual also transforms century-old low-resolution photographs into dramatically restored high-resolution photographs. After each layer is positioned

properly, a camera moves through the scene, simulating a depth-of-field. This optical illusion provides Business Casual's videos with an immersive three-dimensional look and feel.

24.     Business Casual's videos are not public domain – nor is the copying of public domain photographs at issue in this case. What *is* at issue is Defendant's admitted copying of the dynamic videos Business Casual created using the process generally described above.

25.     Defendant's admitted copying of Plaintiff's original videos is a testament to their value.

26.     Business Casual's original videos are at the center of this lawsuit.

27.     On March 8, 2021, Business Casual received federal Copyright Registration No. PA0002280262 for the Rockefeller Video (the "Rockefeller Registration"), a copy of which is attached as **Exhibit B**.

28.     On March 8, 2021, Business Casual received federal Copyright Registration No. PA0002280264 for the J.P. Morgan Video (the "J.P. Morgan Registration"), a copy of which is attached as **Exhibit C**.

29.     The Rockefeller Registration and J.P. Morgan Registration may be referred to herein as the "Business Casual Registrations."

30.     The Business Casual Registrations protect Plaintiff's end product, namely, Business Casual's published J.P. Morgan Video and Rockefeller Video, respectively.

31.     Plaintiff does not claim, nor has Plaintiff ever claimed, legal protection concerning any "video editing methods," "sweat of the brow effort," or any other process-like

system used in the creation of its YouTube videos. Business Casual's claims are not attempts to protect its "video editing methods" but rather its "end product" (its copyright-protected YouTube videos).

32.     On January 2, 2021, Business Casual submitted a Digital Millennium Copyright Act ("DMCA") takedown notice to YouTube concerning a video published by Defendant on Defendant's YouTube Channel at *https://www.youtube.com/watch?v=NsVlUcRZa2Y* that copied one-minute-and-twenty-eight seconds (1 minute and 28 seconds) of original video content from Plaintiff's J.P. Morgan Video (Defendant's "First Infringing Video").

33.     Upon information and belief, Defendant used a third-party "video downloader" to illegally download Plaintiff's J.P. Morgan Video from Plaintiff's YouTube Channel. After illegally downloading Plaintiff's J.P. Morgan Video, Defendant used video editing software to 'copy and paste' Plaintiff's copyrighted material into Defendant's infringing video. Defendant then removed Business Casual's watermark (the "BC" logo displayed in the bottom-right corner of all Business Casual YouTube videos) and added its own "RT" watermark to the bottom-right corner of the screen. Finally, before uploading Defendant's First Infringing Video to YouTube, Defendant deliberately altered the brightness and saturation of the copyright-protected content it copied from Plaintiff's J.P. Morgan Video to circumvent YouTube's Content ID and Copyright Match Tools (technology intended to detect copyright infringement activities).

34.     On January 11, 2021, YouTube removed Defendant's First Infringing Video (nine calendar days after YouTube received Plaintiff's DMCA takedown notice) and applied a copyright strike to Defendant's YouTube Channel.

35.     On January 18, 2021, Business Casual received an email from Defendant's representative stating, "We got a [copyright] strike on our RT Arabic YT account […] Could you please let us know why we received strike for it?"

36.     On January 18, 2021, Business Casual responded to Defendant's representative in an email stating, "The [copyright] strike placed on RT is, indeed, legitimate. Your video was a blatant rip-off of my company's video."

37.     On January 19, 2021, Defendant's representative replied, "[y]es, you are right. I am terribly sorry about the use of your material in our project. Due to an oversight and misunderstanding here, my colleagues used this fragment without your permission […] We are ready to pull our entire project from circulation and remove your copyrighted material if you retract the [copyright] strike."

38.     On January 19, 2021, Defendant emailed Plaintiff stating, "[f]ollowing up on my previous email I'd like to add that my colleagues filed a [DMCA counter notification] by mistake yesterday. So please ignore it."

39.     On January 20, 2021, Business Casual received confirmation from YouTube that Defendant had retracted the DMCA counter notification Defendant filed with YouTube concerning Defendant's First Infringing Video.

40.     On February 9, 2021, Business Casual submitted a DMCA takedown notice to YouTube concerning a second video published by Defendant on Defendant's YouTube Channel at *www.youtube.com/watch?v=ju5ScQ-yibw* that copied seven (7) seconds of original video content from Plaintiff's Rockefeller Video (Defendant's "Second Infringing Video").

41.     Upon information and belief, Defendant used a third-party "video downloader" to illegally download Plaintiff's Rockefeller Video from Plaintiff's YouTube Channel. After illegally downloading Plaintiff's Rockefeller Video, Defendant used video editing software to 'copy and paste' Plaintiff's copyrighted material into Defendant's infringing video. Defendant then removed Business Casual's watermark (the "BC" logo displayed in the bottom-right corner of all Business Casual YouTube videos) and added its own "RT" watermark to the bottom-right corner of the screen. Finally, before uploading Defendant's Second Infringing Video to YouTube, Defendant deliberately altered the brightness and saturation of the copyright-protected content it copied from Plaintiff's Rockefeller Video to circumvent YouTube's Content ID and Copyright Match Tools.

42.     On February 15, 2021, Business Casual submitted a DMCA takedown notice to YouTube concerning a third video published by Defendant on Defendant's YouTube Channel at *www.youtube.com/watch?v=3AokIYKBz8I* that copied eighty-minutes-and-fifty-seconds (8 minutes and 50 seconds) of original video content from Plaintiff's J.P. Morgan Video (Defendant's "Third Infringing Video").

43.     Upon information and belief, Defendant used a third-party "video downloader" to illegally download Plaintiff's J.P. Morgan Video from Plaintiff's YouTube Channel. After illegally downloading Plaintiff's J.P. Morgan Video, Defendant used video editing software to 'copy and paste' Plaintiff's copyrighted material into Defendant's infringing video. Defendant then removed Business Casual's watermark (the "BC" logo displayed in the bottom-right corner of all Business Casual YouTube videos) and added its own "RT" watermark to the bottom-right corner of the screen. Finally, before uploading Defendant's

Third Infringing Video to YouTube, Defendant deliberately altered the brightness and saturation of the copyright-protected content it copied from Plaintiff's J.P. Morgan Video to circumvent YouTube's Content ID and Copyright Match Tools.

44.     On February 18, 2021, YouTube removed Defendant's Third Infringing Video (three calendar days after YouTube received Plaintiff's DMCA takedown notice) and applied a second copyright strike to Defendant's YouTube Channel.

45.     On February 20, 2021, Business Casual's general counsel sent a letter to Defendant's counsel concerning TV-Novosti's brazen and repeated infringement of Business Casual's original content and proposed a settlement that would allow Defendant to avoid the termination of Defendant's YouTube Channel and its thirty-eight associated channels under YouTube's published 3-strike repeat infringer policy.

46.     Business Casual did not receive a response.

47.     On February 25, 2021, Business Casual re-submitted its DMCA takedown notification concerning Defendant's Second Infringing Video.

48.     On February 28, 2021, YouTube notified Business Casual that Defendant had filed a DMCA counter notification with respect to Defendant's Third Infringing Video and would reinstate Defendant's Third Infringing Video if Business Casual did not seek a court order to restrain Defendant's infringing activity within ten (10) business days, the period prescribed by the safe harbor provision of the DMCA.

49.     On March 2, 2021, Business Casual's general counsel sent a second letter to Defendant's counsel in another good-faith attempt to resolve the matter amicably.

9

50.     Plaintiff's good-faith efforts to resolve this matter without litigation were not reciprocated. Defendant's counsel did not return any phone calls, letters, or emails from Business Casual's general counsel until *after* Business Casual filed the above-captioned lawsuit.

51.     Defendant expressly agreed to accept service from Plaintiff by way of submitting its DMCA counter notifications to YouTube. Despite this, Defendant evaded Plaintiff's process server for over a month and did not authorize its counsel to accept service on Defendant's behalf.

52.     Plaintiff filed a motion seeking alternative service on June 2, 2021, and Defendant was served the next day, June 3, 2021, via email.

53.     On March 4, 2021, YouTube removed Defendant's Second Infringing Video (twenty-four calendar days after YouTube received Plaintiff's DMCA takedown notice) and applied a third copyright strike to Defendant's YouTube Channel.

54.     On March 12, 2021, YouTube notified Business Casual that Defendant had filed a DMCA counter notification with respect to Defendant's Second Infringing Video and would reinstate Defendant's Second Infringing Video if Business Casual did not seek a court order to restrain Defendant's infringing activity within ten (10) business days. Accordingly, Plaintiff amended its Complaint to prevent the reinstatement of Defendant's Second Infringing Video on YouTube.

55.     On March 19, 2021, a senior-level Google executive, Elisabet Lykhina, emailed Business Casual confirming that Defendant was a repeat infringer that had received three copyright strikes stating, "I would like to kindly get in touch with you to discuss the cur-

rent case of 3 YT strikes that your channel Business Casual has recently sent to a RU/CIS news YT channel RT Arabic." (Ex. D.)

56.     Defendant has admitted that Defendant refuses to retract its outstanding counter notifications because "it [is] [TV-Novosti's] understanding that withdrawing the counter-notifications will result in YouTube terminating RT's channel." (Ex. E.)

57.     On March 31, 2021, YouTube terminated Defendant's YouTube Channel under YouTube's published 3-strike repeat infringer policy after it received three copyright strikes from Business Casual within fifty-two (52) days.

58.     Within a few hours of the repeat infringer's termination, however, YouTube reinstated Defendant's YouTube Channel following public outcry from the Kremlin – including, but not limited to, public backlash from Maria Zakharova, Spokeswoman on behalf of the Russian Federation's Ministry of Foreign Affairs, who accused Business Casual of being "an internal American terrorist," amongst other colorful names (Ex. F.)

59.     On March 31, 2021, the same day YouTube briefly terminated Defendant's YouTube channel, a representative of Defendant remarked in a tweet: "YouTube has restored RT Arabic's channel on its platform. We thank our partners at YouTube Russia for a prompt reaction!" Defendant's tweet has since been deleted. Defendant's representative also stated that Plaintiff is engaged in a "coordinated attack funded by a large financial institution for political reasons." (Ex. G.)

60.     Upon information and belief, Defendant deleted evidence material to this lawsuit, including but not limited to other infringing videos published by Defendant after receiving its third copyright strike from Business Casual. (Ex. H.)

61.     On April 1, 2021, the day after Defendant's YouTube Channel was reinstated in violation of 17 U.S. Code § 512(i)(1)(A), Defendant immediately removed thousands of videos from Defendant's YouTube Channel.

62.     Upon information and belief, Defendant removed thousands of videos from Defendant's YouTube Channel — many of which are believed to have contained infringing material — to avoid receiving more copyright strikes from Business Casual.

63.     The combined viewership of the thousands of videos removed by Defendant on April 1, 2021, amounted to more than 2.65 billion views (2,651,040,142) *on that day alone*. Upon information and belief, a significant portion of these viewers were in the United States.

64.     On March 6, 2021, two days after Defendant's YouTube Channel received its third copyright strike from Business Casual, Defendant removed videos with a combined view count of, at least, 6.9 million (6,979,790) views that day.

65.     On March 7, 2021, three days after Defendant's YouTube Channel received its third copyright strike from Business Casual, Defendant removed videos with a combined view count of, at least, 61.1 million (61,157,444) views that day.

66.     On March 8, 2021, four days after Defendant's YouTube Channel received its third copyright strike from Business Casual, Defendant removed videos with a combined view count of at least 6.3 million (6,327,295) views that day.

67.     On March 14, 2021, ten days after Defendant's YouTube Channel received its third copyright strike from Business Casual, Defendant removed videos with a combined view count of, at least, 38.3 million (38,303,848) views that day.

68.     On March 16, 2021, twelve days after Defendant's YouTube Channel received its third copyright strike from Business Casual, Defendant removed videos with a combined view count of, at least, 6.8 million (6,818,236) views that day.

69.     On March 18, 2021, fourteen days after Defendant's YouTube Channel received its third copyright strike from Business Casual, Defendant removed videos with a combined view count of, at least, 10.3 million (10,350,850) views that day.

70.     On March 28, 2021, twenty-four days after Defendant's YouTube Channel received its third copyright strike from Business Casual, Defendant removed videos with a combined view count of, at least, 8.9 million (8,934,500) views that day.

71.     All in all, Defendant removed thousands of videos from Defendant's YouTube Channel with a collective count of, at least, 2.78 billion (2,789,912,105) views after receiving its third copyright strike from Business Casual.

72.     Defendant's publicly available viewership data indicates that Defendant has never engaged in any such video purging activity prior to Business Casual's DMCA takedown notices. (Ex. H.)

73.     Upon information and belief, each of Defendant's infringing videos identified above was hosted on YouTube's California-based servers.

74.     Defendant directed each of its infringing videos identified above at viewers in the United States, including viewers within this judicial district.

75.     Each of Defendant's infringing videos were intended to, and did, have an effect in the United States.

76.     Defendant chose not to restrict its infringing videos to viewers in the United States in a deliberate effort to target viewers in the United States.

77.     Upon information and belief, Defendant maintains at least one New York-based correspondent, Zhanna Agalakova.

78.     Upon information and belief, Defendant maintains a New York-based production studio.

79.     Upon information and belief, Defendant employs a camera crew in New York.

80.     Upon information and belief, Defendant regularly records video segments in New York and within this judicial district. By way of example, Defendant's New York correspondent, Zhanna Agalakova, met with New Jersey resident Alex Goldfarb at Defendant's New York-based production studio and recorded an interview on March 23, 2018. *Goldfarb v. Channel One Russia*, 442 F.Supp.3d 649, 660 (S.D.N.Y. 2020).

81.     Defendant published multiple video segments about Alex Goldfarb, alleging that he was involved in the murder of Russian dissident Alexander Litvinenko, as well as being an agent of the United States Central Intelligence Agency.

82.     Defendant's Editor in Chief, Margarita Simonyan, has referred to Defendant's media outlet as "'an information weapon' to be used against the United States." (Ex. I.)

83.     Defendant regularly publishes videos that are intended to, and do, have an effect on persons within the United States and within this judicial district.

84.     Upon information and belief, Defendant distributes its television programming through a number of United States-based companies, including RCN New York, Di-

14

recTV, Comcast, Charter, Verizon Services Corp., Comcast-ATT, Cox, and Frontier Communications to persons throughout New York and within this judicial district.

85.     Upon information and belief, each of Defendant's infringing videos identified above featured advertisements from United States-based companies targeting persons in the United States, including, but not limited to; Starz Entertainment, Amazon, Walmart, Zoom, GlaxoSmithKline, eBay, Liberty Mutual, Twilio, Priceline, Oracle, and others.

86.     Each of Defendant's infringing videos were not just "merely accessible" in the United States but purposefully directed at persons in the United States, including persons within this judicial district.

87.     According to the United States Department of Justice, "RT and TV-Novosti are Proxies of the Russian Government" and that "RT (formerly 'Russia Today') is a Russian international television network headquartered in Russia that disseminates broadcasting content to the United States, among other countries."

88.     According to the United States Department of Justice, "through its production of programming for RT broadcasts in the United States, it seeks to 'influence ... any section of the public within the United States with reference to formulating, adopting, or changing the domestic or foreign policies of the United States, or with reference to the political or public interests, policies, or relations' of Russia, for or in the interests of Russia."

89.     According to the United States Department of Justice, TV-Novosti is a foreign principal and maintains an office at 1325 G. Street, NW Suite 250, Washington, DC 20005.

90.     Defendant actively conducts business in the United States, maintains business interests and contacts in the United States, and employs several persons in the United States.

## CLAIMS FOR RELIEF

### COUNT 1
### COPYRIGHT INFRINGEMENT
### (Defendant's First Infringing Video)

91.     Plaintiff restates all paragraphs as if fully restated herein.

92.     Plaintiff is the owner of the J.P. Morgan Registration for the J.P. Morgan Video.

93.     Defendant's First Infringing Video includes copied portions of the J.P. Morgan Video.

94.     Defendant's First Infringing Video infringed upon Plaintiff's J.P. Morgan Registration.

95.     Defendant admitted that Defendant's First Infringing Video unlawfully copied portions of Plaintiff's J.P. Morgan Video.

96.     Defendant's First Infringing Video was commercially exploited (i.e., monetized on YouTube) and used in other contexts from which Defendant profited.

97.     Defendant's actions constitute willful copyright infringement pursuant to 17 U.S.C. § 501.

98.     Plaintiff is entitled to actual damages and Defendant's profits.

99.     Plaintiff is entitled to its costs and attorneys' fees pursuant to 17 U.S.C. § 505.

### COUNT 2
### COPYRIGHT INFRINGEMENT
### (Defendant's Second Infringing Video)

100.     Plaintiff restates all paragraphs as if fully restated herein.

101.     Plaintiff is the owner of the Rockefeller Registration for the Rockefeller Video.

102.     Defendant's Second Infringing Video includes copied portions of the Rockefeller Video.

103.     Defendant's Second Infringing Video infringed upon Plaintiff's Rockefeller Registration.

104.     Defendant's Second Infringing Video was commercially exploited (i.e., monetized on YouTube) and used in other contexts from which Defendant profited.

105.     Defendant's actions constitute willful copyright infringement pursuant to 17 U.S.C. § 501.

106.     Plaintiff is entitled to actual damages and Defendant's profits.

107.     Plaintiff is entitled to its costs and attorneys' fees pursuant to 17 U.S.C. § 505.

### COUNT 3
### COPYRIGHT INFRINGEMENT
### (Defendant's Third Infringing Video)

108.     Plaintiff restates all paragraphs as if fully restated herein.

109.     Plaintiff is the owner of the J.P. Morgan Registration for the J.P. Morgan Video.

110.     Defendant's Third Infringing Video includes copied portions of the J.P. Morgan Video.

111.     Defendant's Third Infringing Video infringed upon Plaintiff's J.P. Morgan Registration.

112.    Defendant's Third Infringing Video was commercially exploited (i.e., monetized on YouTube) and used in other contexts from which Defendant profited.

113.    Defendant's actions constitute willful copyright infringement pursuant to 17 U.S.C. § 501.

114.    Plaintiff is entitled to actual damages and Defendant's profits.

115.    Plaintiff is entitled to its costs and attorneys' fees pursuant to 17 U.S.C. § 505.

### COUNT 4
### DMCA VIOLATION PURSUANT TO 17 U.S.C. § 512(f)

116.    Plaintiff restates all paragraphs as if fully restated herein.

117.    On January 19, 2021, Defendant knowingly and materially misrepresented the infringing nature of Defendant's First Infringing Video in a DMCA counter notification that it retracted the next day.

118.    On February 9, 2021, Plaintiff filed a DMCA takedown notice with YouTube requesting the removal of Defendant's Second Infringing Video.

119.    On February 15, 2021, Plaintiff filed another DMCA takedown notice with YouTube requesting the removal of Defendant's Third Infringing Video.

120.    In response to Plaintiff's DMCA takedown notice sent to YouTube on February 15, 2021, concerning Defendant's Third Infringing Video, Defendant made a knowingly false and material misrepresentation by submitting a DMCA counter notification, forwarded to Plaintiff by YouTube on February 28, 2021.

121.    Defendant's Third Infringing Video copied the *exact* same infringing content exploited in Defendant's First Infringing Video. For the avoidance of any confusion what-

soever: Defendant's First Infringing Video and Defendant's Third Infringing Video feature the *exact* same segments Defendant admittedly copied from Plaintiff's J.P. Morgan Video (they are 'pixel for pixel' identical). Despite this, Defendant has still not retracted its DMCA counter notification with YouTube concerning its Third Infringing Video, despite acknowledging (i); that Defendant's First Infringing Video copied from Business Casual's J.P. Morgan Video; (ii) that Defendant's copyright strike pertaining to its First Infringing Video is "indeed legitimate;" (iii) that Defendant copied from Business Casual's J.P. Morgan Video "without permission" from Plaintiff; (iv) that Defendant submitted a DMCA counter notification to YouTube "by mistake" that it subsequently withdrew less than twenty-four hours later, and; (v) that Business Casual's J.P. Morgan Video is Business Casual's "copyrighted material."

122.    Defendant's DMCA counter notification sent to YouTube concerning Defendant's Third Infringing Video was made with knowledge that it was a willful and material misrepresentation.

123.    Defendant has admitted that it is refusing to retract its outstanding counter notifications in a deliberate effort to avoid termination from YouTube's platform, stating "it [is] [Defendant's] understanding that withdrawing the counter-notifications will result in YouTube terminating [Defendant's] channel."

124.    With respect to Plaintiff's DMCA takedown notice sent to YouTube on February 9, 2021, concerning Defendant's Second Infringing Video, Defendant made a knowingly false and material misrepresentation by submitting a DMCA counter notification, for-

warded to Plaintiff by YouTube on March 12, 2021, stating that Defendant's Second In-

fringing Video did not infringe upon Plaintiff's copyright rights.

125.    Defendant's DMCA counter notification to YouTube with respect to Defendant's

Second Infringing Video was made with knowledge that it was another willful and mater-

ial misrepresentation.

126.    Defendant's First Infringing Video, Second Infringing Video, and Third Infringing

Video, each concern historic events pertaining to the United States in the early 1800s and

serve the same purpose as Plaintiff's original videos.

127.    Plaintiff has suffered damages and continues to suffer damages as a result of De-

fendant's willful and material misrepresentations.

128.    Defendant is liable for Plaintiff's damages, including costs and attorneys' fees,

pursuant to 17 U.S.C. § 505 and 17 U.S. Code § 512(f).

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully asks that the Court enter the following judgment

against Defendants:

1.    For a declaration that Defendant is a repeat infringer.

2.    For a declaration that Defendant's malicious and repeated infringement activities

alleged in this Complaint constitute the "appropriate circumstances" for termination, pur-

suant to 17 U.S. Code § 512 (i)(1)(A), namely:  (i) removing Plaintiff's Business Casual

watermark and replacing it Defendant's own "RT" watermark; (ii) changing the satura-

tion and brightness of Plaintiff's "copyrighted material" admittedly copied from Plain-

tiff's YouTube Channel "without permission" in an effort to avoid getting caught, and

then, after getting caught; (iii) deliberately submitting DMCA counter notifications to YouTube which Defendant knew were fraudulent and contained material misrepresentations for the sole purpose of avoiding termination from YouTube's platform.

3.     That Defendant, its officers, agents, servants, employees, and any persons in active concert or participation with it be permanently enjoined and restrained from:

    a.     Infringing Plaintiff's copyright rights in the works covered by the Business Casual Registrations;

    b.     Taking any action that directly or indirectly enables, facilitates, permits, assists, solicits, encourages or induces any user or other third party to:  (i) copy, extract, host, index, reproduce, download, stream, exhibit, distribute, communicate to the public, upload, link to, transmit, publicly perform, or otherwise use or exploit in any manner any of Plaintiff's works covered by the Business Casual Registrations or portion(s) thereof; or (ii) to make available any of Plaintiff's works covered by the Business Casual Registrations for copying, hosting, indexing, reproducing, downloading, streaming, exhibiting, distributing, communicating to the public, uploading, linking to, transmitting, publicly performing, or for any other use or means of exploitation; and

    c.     Assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a)-(b).

4.      That third-parties providing services used in connection with Defendant's You-Tube Channel, including without limitation, web hosting providers, cloud services providers, digital advertising service providers, search-based online advertising services (such as through paid inclusion, paid search results, sponsored search results, sponsored links, and Internet keyword advertising), domain name registration privacy protection services, providers of social media services (e.g., Facebook and Twitter), and user-generated and online content services (e.g., YouTube, Periscope, Flickr and Tumblr) be required to cease or disable providing such services to Defendant in relation to Defendant's YouTube Channel and/or infringement of Plaintiffs' works covered by Business Casual's Registrations;

5.      That the transfer of Defendant's assets to Plaintiff, specifically including assets in any of Defendant's payment processor accounts, including but not limited to Google Ad-Sense, Payoneer, Dwolla, Stripe, and PayPal arising from, related to, or to account for their infringement of Plaintiff's works covered by the Business Casual Registrations or other monetary awards be ordered by the Court;

6.      That Defendant account for and pay Plaintiff all profits realized by Defendant by reason of their unlawful acts alleged herein;

7.      That Plaintiff be awarded its damages caused by Defendant's unlawful willful acts herein alleged;

8.      That Plaintiff be awarded its costs and attorneys' fees incurred in this action pursuant to U.S.C. 17 U.S. Code § 512(f);

9.      That Plaintiff be awarded pre-judgment interest on its judgment; and

10.     Such other and further relief as the Court may deem equitable, proper and just.


Dated:  July 30, 2021                                     Respectfully submitted,
New York, New York                                        DUFF LAW PLLC

                                               By:  _____
                                                    Anderson J. Duff (AD2029)
                                                    43-10 Crescent St. Ste. 1217
                                                    New York, New York 11101
                                                    (t) 646.450.3607
                                                    (f) 917.920.4217
                                                    (e) ajd@hoganduff.com