UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BUSINESS CASUAL HOLDINGS, LLC,
                      Plaintiff,

- against -

TV-NOVOSTI,
                      Defendant.

21-cv-2007 (JGK)

MEMORANDUM OPINION
AND ORDER

---

JOHN G. KOELTL, District Judge:

    The plaintiff, Business Casual Holdings, LLC, brought this action against TV-Novosti for copyright infringement and violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201 et seq. ("DMCA"). See ECF No. 27 (the "Second Amended Complaint" or "SAC"). The plaintiff alleges that the defendant incorporated certain segments of the plaintiff's copyrighted videos into the defendant's videos. See id. The defendant now moves to dismiss the Complaint. See ECF No. 29. For the following reasons, the motion to dismiss the copyright infringement claims is **denied**, and the motion to dismiss the DMCA claims is **granted** without prejudice to the assertion of an amended claim in an amended complaint.

### I.
### A.

    In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the allegations in the complaint are accepted as true and all reasonable inferences must be drawn in the plaintiff's favor. McCarthy v. Dun & Bradstreet Corp., 482

F.3d 184, 191 (2d Cir. 2007). The Court may also take judicial notice of works incorporated into and relied on in the Complaint. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002). Moreover, where copyrighted and allegedly infringing works are "incorporated by reference into the pleadings, the works themselves supersede . . . any contrary allegations, conclusions or descriptions of the works contained in the pleadings." Brown v. Netflix, Inc., 855 F. App'x 61, 63 (2d Cir. 2021).[1]

Accordingly, in addition to the facts in the Complaint, the Court takes judicial notice of the copyrighted videos, which are relied on by, linked to in, and thereby incorporated into the Complaint. The Court also takes judicial notice of the allegedly infringing videos, which are referenced in and relied on by the Complaint, and of the Arabic-to-English translations of those videos. Two of the allegedly infringing videos and the translations thereof were provided as exhibits to the motion to dismiss. See Wax Decl., ECF No. 31, Exs. 2, 3, 5, 6. The plaintiff does not dispute that these exhibits are true and correct. See Guity v. Santos, No. 18-cv-10387, 2019 WL 6619217,

---

[1] Unless otherwise noted, this Memorandum Opinion and Order omits all alterations, omissions, emphasis, quotation marks, and citations in quoted text.

at *2 (S.D.N.Y. Dec. 5, 2019) (taking judicial notice of a translation where no party disputed its accuracy).

**B.**

The plaintiff creates original documentary content that it posts on its YouTube channel. SAC ¶ 7. In some of its videos, including those at issue in this case, the plaintiff "turn[s] two-dimensional images into three-dimensional models" through a process called "parallax" that requires "myriad creative choices." Id. ¶ 23. The plaintiff also alleges that it "transforms century-old low-resolution photographs into dramatically restored high-resolution photographs," and that "[a]fter each layer is positioned properly, a camera moves through the scene, simulating a depth-of-field. This optical illusion provides Business Casual's videos with an immersive three-dimensional look and feel." Id.

On June 8, 2018, Business Casual published an original documentary video entitled "How Rockefeller Built His Trillion Dollar Oil Empire" (the "Rockefeller Video"). Id. ¶ 21. The video is 9 minutes and 6 seconds long, and summarizes the rise of John D. Rockefeller and Standard Oil. At timestamps 7:23-7:30, the video includes a photo of John Rockefeller sitting at a desk, to which the parallax process has been applied.

On June 25, 2020, Business Casual published another original documentary video entitled "J.P. Morgan Documentary:

3

How One Man Financed America" (the "J.P. Morgan Video"). Id. ¶ 22. The video is 40 minutes and 21 seconds long, and provides an overview of the life of John Pierpont Morgan. The video contains numerous photos to which the parallax process has been applied, as well as, at timestamps 15:26-15:31, a photo of the subject, which has been enhanced by the plaintiff. See id.

Both of the plaintiff's videos are largely, but not entirely, admiring of their respective subjects. The plaintiff received copyright registration numbers for both of these videos. Id. ¶¶ 27-28.

The defendant is a Russian autonomous non-profit organization that operates the YouTube channel RT Arabic and 38 associated YouTube channels. Id. ¶ 9.

On January 2, 2021, the plaintiff submitted a DMCA takedown notice to YouTube regarding a video published on RT Arabic that copied 1 minute and 28 seconds of original video content from the J.P. Morgan Video (the "First RT Video"). Id. ¶ 32. In particular, the First RT Video includes many of the same photos used in the J.P. Morgan Video, with the same parallax effect, and includes at timestamps 12:58-13:00 the enhanced photo of J.P. Morgan. The First RT Video is in interview format and provides a broad overview of the establishment of central banks around the world and of the gold standard. See Wax Decl., ECF No. 31, Ex. 3. On January 11, 2021, YouTube removed the First RT

4

Video and applied a copyright strike to the defendant's channel. Id. ¶ 34.

On February 9, 2021, Business Casual submitted a second DMCA takedown notice to YouTube regarding a video published on RT Arabic that copied 7 seconds of the Rockefeller Video (the "Second RT Video"). Id. ¶ 40. In particular, the Second RT Video included the parallax-enhanced photo of Rockefeller. The Second RT Video is also largely in interview format, and provides a history of the oil industry around the world.

On February 15, 2021, Business Casual submitted a third DMCA takedown notice to YouTube regarding a video published on RT Arabic that copied 8 minutes and 50 seconds of original video content from the J.P. Morgan Video (the "Third RT Video"). Id. ¶ 42. The plaintiff alleges that, in all of the defendant's videos at issue, the defendant altered the brightness and saturation of the copied content and replaced the plaintiff's watermark with the defendant's watermark. Id. ¶¶ 33, 41, 43.

On February 18, 2021, YouTube removed the Third RT Video and applied a second copyright strike to the defendant's YouTube channel. Id. ¶ 44.

On February 25, 2021, Business Casual re-submitted its DMCA takedown notification regarding the Second RT Video. Id. ¶ 47.

On February 28, 2021, YouTube notified the plaintiff that the defendant had filed a DMCA counter notification with respect

to the Third RT Video and that YouTube would reinstate the Third RT Video if Business Casual did not seek a court order to restrain the allegedly infringing activity within 10 business days. Id. ¶ 48. On March 8, 2021, the plaintiff filed the complaint initiating this action. ECF No. 1.

On March 4, 2021, YouTube removed the Second RT Video and applied a third copyright strike to the defendant's YouTube channel. SAC ¶ 53.

On March 12, 2021, YouTube notified Business Casual that the defendant had also filed a DMCA counter notification with respect to the Second RT Video and that YouTube would similarly reinstate that video if the plaintiff did not seek a court order to restrain the allegedly infringing activity within 10 business days. Id. ¶ 54. On March 24, 2021, the plaintiff amended its complaint, ECF No. 7, and on July 30, 2021, the plaintiff filed the Second Amended Complaint, ECF No. 27, which the defendants now move to dismiss.

## II.

The defendant moves to dismiss the counts of copyright infringement on the grounds that the defendant's uses of excerpts of the plaintiff's videos were fair uses. Under the Copyright Act of 1976, fair use is a complete defense to a claim of copyright infringement. See 17 U.S.C. § 107. The Copyright

Act provides a non-exhaustive list of four factors that courts are to consider in making a fair use determination:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. "[F]air use presents a holistic, context-sensitive inquiry . . . . All four statutory factors are to be explored, and the results weighed together . . . ." Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith, 11 F.4th 26, 37 (2d Cir. 2021) (2d Cir. 2021).

Because fair use is an affirmative defense, the defendant bears the burden of proving that the fair use factors weigh in its favor. Id. at 49. Moreover, fair use presents a mixed question of law and fact. Id. at 36. As such, it is rarely appropriate for a court to make the fact-intensive determination of fair use at the motion to dismiss stage. See Graham v. Prince, 265 F. Supp. 3d 366, 377, 379 (S.D.N.Y. 2017).

**A.**

**1.**

The first fair use factor asks whether the secondary use is transformative, commercial, and in good faith. Nicklen v. Sinclair Broad. Grp., Inc., No. 20-cv-10300, 2021 WL 3239510, at *5 (S.D.N.Y. July 30, 2021). To determine if the secondary use

7

is transformative, the Court asks "whether the new work merely supersedes the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message." Warhol, 11 F.4th at 37.

The defendant's videos take portions of the plaintiff's videos, re-arrange them, and add new commentary to them. But the defendant has not made any meaningful changes to the visual clips themselves. See Grant v. Trump, No. 20-cv-7103, 2021 WL 4435443, at *4 (S.D.N.Y. Sept. 28, 2021) (finding no transformation where a copyrighted work was used without any modifications). Where a secondary work "retain[s] the essential elements of[] its source material" such that the original is "instantly recognizable," as these clips are, the secondary work is unlikely to be transformative. Warhol, 11 F.4th at 42, 47. Merely overlaying new audio does not effect a sufficient transformation to allow the Court to find fair use as a matter of law. See Grant, 2021 WL 4435443, at *4.

Likewise, the defendant has not changed the purpose of the parallax-enhanced images. In the original works, as in the secondary works, the purpose of the parallax-enhanced images was to provide visual illustration for the overlain audio commentary. See Ringgold v. Black Ent. Television, Inc., 126 F.3d 70, 79 (2d Cir. 1997) (finding no transformative use where

the defendant used the copyrighted work "for precisely a central purpose for which it was created").

The defendant argues that the meanings of the videos are different. But the defendant has simply lifted the copyrighted depictions that the plaintiff created for the purpose of illustrating the defendant's own video. The defendant did not transform the plaintiff's video depictions in any meaningful way. The first subfactor weighs heavily against fair use.

### 2.

The first fair use factor also asks whether the secondary work is commercial or for nonprofit use. "The crux of the profit/nonprofit distinction is not whether the sole motive of the use is monetary gain but whether the user stands to profit from exploitation of the copyrighted material . . . ." Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 562 (1985). "Monetary gain is not the sole criterion," especially in settings where "profit is ill-measured in dollars." Weissmann v. Freeman, 868 F.2d 1313, 1324 (2d Cir. 1989). In this case, the plaintiff's allegations give rise to a plausible inference that the defendant was motivated by both pecuniary and political gain. See SAC ¶ 88. The defendant could have sought to pay for the copyrighted video clips that it used or sought to use others. The defendant chose rather to use the clips without

payment for its own purposes. This further undermines any finding of fair use. See Grant, 2021 WL 4435443, at *5.

**3.**

The bad faith of the secondary user may also weigh against a finding of fair use. See, e.g., Harper, 471 U.S. at 562-63. The plaintiff has alleged facts that could raise a plausible inference of bad faith, including the allegation that the defendant replaced the plaintiff's watermark and changed the coloring of the videos to circumvent YouTube's algorithms. See, e.g., Fioranelli v. CBS Broad. Inc., No. 15-cv-952, 2021 WL 3372695, at *28 (S.D.N.Y. July 28, 2021).

Accordingly, based on the allegations in the Complaint, the first factor weighs strongly against a finding of fair use.

**B.**

The second fair use factor looks to the nature of the copyrighted work. The defendant argues that the nature of the copyrighted work cuts in the defendant's favor because the source material is factual, and factual material cuts less closely to the core of copyright. See, e.g., Stewart v. Abend, 495 U.S. 207, 237 (1990). However, the plaintiff has modified the photos, and it is based on those modifications that the plaintiff claims a copyright. If anything, the fact that the source material for the plaintiff's videos is in the public domain counsels against finding fair use, because the defendant was free to use the public domain photos, rather than the

modified clips, to create its YouTube videos. "There's no good reason why [the] defendant[] should be allowed to appropriate someone else's copyrighted efforts . . . when so many noncopyrighted alternatives . . . were available." Kienitz v. Sconnie Nation LLC, 766 F.3d 756, 759 (7th Cir. 2014). Accordingly, this factor also counsels against finding fair use at the motion to dismiss stage.

### C.

The third fair use factor looks to the amount and substantiality of the portion used in relation to the copyrighted work as a whole. In this case, the plaintiff has alleged that the Second RT Video used 7 seconds of the plaintiff's 9-minute, 6-second video, and that the First and Third RT Videos used 1 minute, 28 seconds and 8 minutes, 50 seconds of the plaintiff's 40-minute, 21-second video. While these are small portions of the entire copyrighted works, the portions are not so trivial as to warrant dismissal under the de minimis doctrine. See Ringgold, 126 F.3d at 75-77.

### D.

Finally, the fourth fair use factor considers the effect of the use on the potential market for or value of the copyrighted work. This factor "ask[s] not whether the second work would damage the market for the first (by, for example, devaluing it through parody or criticism), but whether it usurps the market for the first by offering a competing substitute." Warhol, 11

11

F.4th at 48. In one sense, the defendant's videos are alternative ways of learning about the lives of J.P. Morgan and John D. Rockefeller. On the other hand, the defendant's videos have a broader focus and are in a different language, meaning that they cater to a different audience. Such factual issues preclude the Court from determining the effect of the defendant's videos on the market for the plaintiff's videos at this stage.

All told, based on the allegations in the Complaint, the first three factors weigh against a finding of fair use. The fourth factor, which the Supreme Court has described as "the single most important element of fair use," Harper, 471 U.S. at 566, cannot be determined without further factual development. Accordingly, the motion to dismiss the copyright infringement claims is **denied**.

### III.

17 U.S.C. § 512(f)(2) provides that "[a]ny person who knowingly materially misrepresents . . . that material or activity was removed or disabled by mistake or misidentification shall be liable for any damages, including costs and attorneys' fees, incurred by . . . any copyright owner . . . who is injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in . . . ceasing to disable access to" the allegedly infringing material.

The defendant argues that the plaintiff's DMCA claim should fail because the plaintiff has not alleged that YouTube, the service provider, in fact "ceas[ed] to disable access" to the defendant's videos. The plaintiff responds that the DMCA counter notifications filed by the defendant were filed in bad faith to avoid the defendant's being barred by YouTube and that the plaintiff was required to file successive complaints to keep the infringing videos off YouTube.

However, read in the context of the section as a whole, it is clear that this phrase does not limit § 512(f) claims only to cases where the service provider actually ceases to disable access to the allegedly infringing material, but also applies where the service provider only threatens to do so.

The DMCA immunizes service providers who remove material that the service providers are informed violates a third party's copyright, so long as the service providers restore the material if they receive a good-faith counter notification and if no suit is filed to restrain the allegedly infringing activity. See 17 U.S.C. § 512(g). In this case, the plaintiff does not allege that the allegedly infringing videos were ever restored to YouTube, and neither party cites any authority for the proposition of whether the filing of a bad-faith counter notification that does not trigger a service provider to "ceas[e] to disable access to" allegedly infringing material is

13

sufficient to trigger liability under § 512(f)(2). By its terms, § 512(f)(2) only applies when there has been a misrepresentation in the counter notification and the service provider relies on that misrepresentation and ceases to disable access to the allegedly infringing material. However, given the cursory nature of the parties' briefs, the parties are welcome to develop the factual and legal record of whether there are remedies for the filing of unsuccessful bad-faith counter notifications, but they should do so in the context of an amended complaint. At this point, the motion to dismiss the DMCA claims is **granted** without prejudice to the assertion of an amended DMCA claim in an amended complaint.

### Conclusion

The Court has considered all of the arguments of the parties. To the extent not addressed above, the arguments are either moot or without merit. For the foregoing reasons, the defendant's motion to dismiss the copyright infringement claims is **denied**. The motion to dismiss the DMCA claims is **granted** without prejudice to the assertion of an amended claim in an amended complaint. The Clerk is directed to close Docket No. 29.

SO ORDERED.
Dated:   New York, New York
         March 14, 2022

_____
John G. Koeltl
**United States District Judge**